# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

IN RE:

LESLIE ROAD ASSOCIATES, LLC,

          Debtor.

_____/

CASE NO:  24-11106-SMG

Chapter 7

## MOTION OF RICHARD AND FRANCES HILL TO
## TRANSFER VENUE OF THIS CASE

For their motion to transfer venue of this chapter 7 case to the Western District of Pennsylvania, Richard and Frances Hill (together, the "Hills"), who hold by far the single largest claim in this case, state as follows:

### PRELIMINARY STATEMENT

Assuming solely for purposes of discussion that (i) the person who signed the voluntary petition on behalf of Leslie Road Associates LLC (the "Debtor") was legally authorized to do so and (ii) venue of this chapter 7 case is proper in this district under 28 U.S.C. § 1408, venue nonetheless should be transferred to the Western District of Pennsylvania for the convenience of the parties and in the interest of justice.[1]  The factors that courts in this district and elsewhere traditionally weigh to make that determination point inexorably in one direction: to Pennsylvania.

---

[1] The Hills do not concede either of those propositions, however, and reserve the right to challenge both of those propositions at a later date, should the need arise.  According to the voluntary petition, the individual who signed it was, at that time, a "Former President" of the Debtor, not a current officer.  See Doc. No. 1 at p. 4 of 38.  In response to paragraph 28 of the Debtor's Statement of Financial Affairs [Official Form 207], which asks for the identities of those "people who were in control of the debtor" at the time this case commenced, only two people are listed – and both are labeled as "former" officers, not current ones.  *Id*. at p. 35 of 38.  Although the Debtor purports to be represented by counsel in this case, no attorney counter-signed the voluntary petition.  *Id*. at p. 5 of 38.  And although the person signing the petition "checked the box" to affirm that venue is proper in this district, *id*. at ¶11, the Debtor's "domicile," "principal place of business," and location of its "principal assets" was (and is) in the Western District of Pennsylvania.  The Hills

**BACKGROUND**

1. The Hills are Pennsylvania residents. *See Declaration of Michael W. Calder* (the "Calder Decl."), attached as **Exhibit A**, at ¶3.

2. The Debtor is a limited liability company organized and in good standing under the laws of Pennsylvania. *Id*. at ¶4 (and Ex. 1 thereto).

3. The Hills sued the Debtor in an action styled as *Richard Hill and Frances Hill v. Leslie Road Associates, LLC, et al.*, Case No. GD 20-002351 (the "State Court Action"), before the Court of Common Pleas of Allegheny County, Pennsylvania (the "State Court"). *Id*. at ¶5.

4. Following a trial in the State Court Action spanning 11 days, on November 27, 2023, the jury awarded judgment in favor of the Hills and against the Debtor and one of its co-defendants, Cloverdale Woods, LP ("Cloverdale"), in the sum of $6,250,000, consisting of $1,000,000 in property damage, $250,000 in non-economic damages, and $5,000,000 in punitive damages (collectively, the "Judgment"). The jury also awarded judgment in favor of an additional defendant against whom the Debtor and Cloverdale had asserted a cross-claim. *Id*. at ¶6 (and Ex. 2 thereto).

5. Shortly after the jury awarded the Judgment in favor of the Hills, the attorney who had represented the Debtor and Cloverdale in the State Court Action moved to withdraw as their counsel. On January 3, 2024, the State Court granted that motion, stating that the Debtor and

---

submit that whether this case should be dismissed because of improper venue, or as an unauthorized or improper filing, or as a case commenced in bad faith or for an improper purpose – and any monetary or other consequences from such actions – are questions that should be addressed at a proper time. *See, e.g., In re Little Rest Twelve, Inc.*, 2015 Bankr. LEXIS 831 (Bankr. S.D. Fla. Mar. 13, 2015) (award of sanctions was proper against individual who caused the filing of the debtor's voluntary chapter 7 case, because the individual lacked the corporate authority to do so and because the filing itself was an improper attempt to delay imminent adverse rulings in other cases), *aff'd*, 662 Fed. Appx. 887 (11th Cir. 2016). But the Hills submit that the Court need not reach those issues to decide this motion. Those issues can be left for another day.

2

Cloverdale "may enter the appearance of new counsel within 30 days" – i.e., by February 2, 2024. *Id*. at ¶7 (and Ex. 3 thereto).

6. On February 3, 2024, the Debtor purported to commence this case under chapter 7 of the Bankruptcy Code. *See* Doc. No. 1 (voluntary petition).

7. Frank R. Zokaites ("Mr. Zokaites"), who identified himself on the voluntary petition and related filings as the Debtor's "Former President," signed those papers under oath. *See* Doc. No. 1. Except for the mailing matrix of creditors at the last page (which is typed), all other information he attested to in the petition, schedules of assets and liabilities, and statement of financial affairs is written out by hand. *See id*.

8. The information in the petition and related filings at Doc. No. 1 demonstrate the following facts:

   (a) The addresses of every single one of the Debtor's creditors are in Pennsylvania [*See, e.g.*, Doc. No. 1 at p. 38 of 38];

   (b) None of the Debtor's creditors is listed as having a mailing address in Florida [*See, e.g., id.*];

   (c) The Hills hold the largest claim against the Debtor, by virtue of their $6,250,000 Judgment [Doc. No. 1, Schedule E/F at ¶3.1];

   (d) The only other person listed as a creditor with a "known" dollar amount is owed $150,000 [Doc. No. 1, Schedule E/F at ¶3.2];

   (e) The only real estate in which the Debtor purports to have an interest is located in Mars, Pennsylvania [Doc No. 1, Schedule A/B, at ¶55);

3

(f) The creditors (taxing authorities and a school district) whom the Debtor alleges may have secured claims regarding that real estate interest also are located in Pennsylvania [Doc. No. 1, Schedule D];

(g) The Debtor asserts that the only transfers of money or assets outside the ordinary course of business within the 2 years preceding this case – consisting of "0.02% General Partner Interests of development limited partnerships" – was made to Northwest Land LLC in Wexford, Pennsylvania [Doc. No. 1, Statement of Financial Affairs, at ¶13]; and

(h) Within the one year preceding this chapter 7 case, the only two lawsuits in which the Debtor was involved were pending in the Court of Common Pleas of Allegheny County, Pennsylvania [*Id*. at ¶7]. One of those two lawsuits is the Hills' State Court Action. *Id*.

9. Furthermore, during the State Court Action, Mr. Zokaites (who, as noted above, signed the papers at Doc. No. 1 in this chapter 7 case), testified under oath that:

(a) The Debtor has no employees [Calder Decl. at ¶9(a), Ex. 4 thereto (trial transcript), at pp. 473:20 – 474:1];

(b) His "home address" is in Broward County, Florida, but he also maintains an address in Wexford, Pennsylvania [*Id*. at ¶9(b), trial transcript at p. 483:11-18].

10. Also, in response to the Hills' interrogatories in the State Court Action, the Debtor verified under oath that, at that time:

(a) The Debtor's principal place of business is at 375 Golfside Drive, Wexford, Pennsylvania [Calder Decl. at ¶11(a), Ex. 5 thereto (Responses and Objections to Interrogatories), ¶1(b)];

4

    (b) The Debtor has no other places of business [*Id.* at ¶11(b), Ex. 5 thereto, ¶1(c)]; and

    (c) The location of the Debtor's books and records is 375 Golfside Drive and 10431 Perry Highway, in Wexford, Pennsylvania [*Id.* at ¶11(c), Ex. 5 thereto, ¶1(d)].

11.    According to the papers filed at Doc. No. 1 in this case, the Debtor's *only* connections to Florida (and, more specifically, to this district) are that:

    (a) The "former president" who signed the Debtor's putative voluntary petition lives here (he listed his home address in Fort Lauderdale as also being the Debtor's purported address on the petition); and

    (b) An accountant in Key West maintained or audited the Debtor's books and records within the 2 years preceding this chapter 7 case. [Doc. No. 1 at p. 33 of 38, ¶s 26a.1; 26.b.1].

12.    Even in these respects, the Debtor's putative "connections" to this district are tenuous and ephemeral. First, in the Statement of Financial Affairs, the Debtor's former president represents that "Tax returns [are] in the possession of counsel for Mr. & Mrs. Hill and refused to return." *Id.* at ¶26c.1. Second, in response to question 26 – i.e., "List all firms or individuals who were in possession of the debtor's books of account and records at the time this case is filed" – he checked the box for "None." *Id.* at ¶26c. Thus, the Debtor concedes that no one in this district has possession of its books of account or records. Instead, it asserts that at least some of its records are in the possession of the Hills' litigation counsel – in Pennsylvania.

13.    Finally, nothing in the voluntary petition or related papers suggest that the Debtor actually transacted any business in Florida, let alone in this district. Indeed, the Debtor admits that

during 2024 and all of 2023, its gross revenue was $0.00. *See* Doc. No. 1, Statement of Financial Affairs, ¶1.

15. Whatever business the Debtor conducted during the last 18 months was tied to Pennsylvania, where it claims to have real estate interests, not to this district.

## ARGUMENT

15. Section 1412 of title 28 provides that the venue of a case may be transferred to another district "in the interest of justice or for the convenience of the parties." Similarly, Rule 1014(a)(1) of the Federal Rules of Bankruptcy Procedure authorizes the court, on timely motion of a party in interest or on its own motion, to transfer a case to any other district, "after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, . . . if the court determines that the transfer is in the interest of justice or for the convenience of the parties." This motion is being filed about one month after this case commenced, and thus is timely.

16. To assess whether transfer would be in the interest of justice or for the parties' convenience, courts in this district and elsewhere weigh several factors:

  (a) proximity of creditors of every kind to the court;

  (b) proximity of the debtor to the court;

  (c) proximity of witnesses necessary to the administration of the estate;

  (d) location of assets;

  (e) economic administration of the estate; and

  (f) necessity of ancillary administration if bankruptcy should ensue.

*In re Bensalz Prods., LLC*, 2022 Bankr. LEXIS 1428 at *21 & n.23 (Bankr. S.D. Fla. May 19, 2022) (citing authorities in this and other districts). *See also In re Micci*, 188 B.R. 697 (S.D. Fla. 1995).

17. Those factors that are applicable overwhelmingly support transferring this case to the Western District of Pennsylvania.

18. First, every single creditor in this case is located in the Western District of Pennsylvania. The Debtor admits that all of its creditors' addresses are in or near the city of Pittsburgh (e.g., in Pittsburgh, Clinton, Mars, Wexford, and Butler, Pennsylvania). *See* Doc. No. 1, Schedules D, E/F & creditor mailing matrix at p. 38 of 38.

19. None of the Debtor's creditors are located in the Southern District of Florida. *Id.*

20. If this case remains venued in this district, Local Rule 2090-1 requires counsel from other states (including those who already represent the Pennsylvania creditors, such as the Hills) to associate with local counsel in any ancillary litigation (unless the court waives that requirement for good cause shown). That will add inconvenience and expense that creditors would incur to defend their rights in this court. It also may discourage creditor participation – unlike if this case were pending in Pittsburgh, where all creditors are situated and in which most already have counsel. Such practical considerations also illustrate why venue should be transferred. *See In re Bensalz Prods., supra,* 2022 Bankr. LEXIS 1428 at *21-22 & n.24 (noting that, under the facts of that case, Local Rule 2090-1's local counsel requirement contributed to out-of-state creditors' inconvenience and expense). Because of the distance involved between Pittsburgh and Fort Lauderdale, retaining the Debtor's case in this district may hinder the creditors' ability to participate meaningfully. This first factor points unquestionably toward transfer.

21. Second, even assuming for purposes of argument (but not conceding) that the Debtor has a "location" at Mr. Zokaites's home address in Fort Lauderdale, the Debtor also has a location in western Pennsylvania. During the State Court Action, the Debtor admitted that its principal place of business and its books and records are in Wexford, Pennsylvania, and that it has

7

no other places of business.  *See* Calder Decl. at ¶11(c), Ex. 5 (Responses and Objections to Interrogatories), ¶s 1(b); 1(c).  The Debtor is a Pennsylvania limited liability company.  *Id.* at Ex. 1 thereto.  Its domicile is Pennsylvania, not here.  And, last year (less than 180 days ago, in any event), the Debtor was defending (and Mr. Zokaites was testifying in) the State Court Action in Allegheny County Common Pleas Court – in the Western District of Pennsylvania.  Transferring this case to that district therefore would not inconvenience the Debtor, given its intimate ties to that district.  This second factor leans in favor of transfer.

22. <u>Third</u>, given that all of the Debtor's creditors are located in or near Pittsburgh, any witnesses relating to their rights or claims likely reside in the Western District of Pennsylvania too.  It would be far more convenient, and further the interest of justice, for them to attend proceedings in downtown Pittsburgh, rather than travelling more than a thousand miles to this district.  Even though some of them presumably could provide testimony in this case via videoconference or other remote means, the same would be true for any witnesses the Debtor wishes to call if this case is transferred to Pennsylvania.  That assumes, however, that the Debtor has any witnesses to offer for controversies in this case.  Whether it actually does is a question mark.  Mr. Zokaites testified that the Debtor has no employees.  *See* Calder Decl. at ¶9(a), Ex. 4 thereto (trial transcript), at pp. 473:20 – 474:1.  And in its Statement of Financial Affairs, the Debtor admitted that, as of the petition date in this case, it has no current officers or directors, just two "former" officers.  *See* Doc. No. 1 at p. 35 of 38.  Therefore, this third factor likewise supports transfer.

23. <u>Fourth</u>, the majority (if not all) of the assets the Debtor claims to have are in the Western District of Pennsylvania, not in this district.  It claims to have an interest in real estate situated in Mars, Pennsylvania, just north of Pittsburgh.  *See* Doc. No. 1, Schedule A/B, at ¶55.

Although the Debtor also claims to own intangible property consisting of "goodwill" and "customer lists, mailing lists, or other compilations," it tellingly labels their value, if any, as "unknown." *See id.*, Schedule A/B, at ¶s 63; 65. "Goodwill" obviously has not situs. Given that the Debtor also concedes (i) that no books of account or records were located in this district at the time this case commenced [Doc. No. 1, Statement of Financial Affairs, at ¶26c], (ii) that its tax returns are in Pennsylvania, not in this district [*id.* at ¶26c.1], and (iii) that, during the State Court Action, *all* of its books and records were located in Wexford, Pennsylvania [Calder Decl. at ¶11(c), Ex. 5 (Responses and Objections to Interrogatories), ¶1(d)], it is reasonable to infer that any of the Debtor's "customer lists, mailing lists, or other compilations" are in Pennsylvania. Accordingly, this fourth factor also leans in favor of transfer.

24.     Fifth, administration of this estate and its assets, if any, would be handled more efficiently in the Western District of Pennsylvania. For example, to the extent the Debtor owns an interest in Pennsylvania real estate (as it claims), a bankruptcy judge and chapter 7 trustee versed in that Commonwealth's real estate law would be better positioned to address any legal issues relating to those real estate interests. Therefore, this factor supports transfer of venue too.

25.     Finally, to the extent the sixth factor – "necessity of ancillary administration if bankruptcy should ensue" – is not subsumed within the fifth one, it is not pertinent here.

26.     Aside from the six factors courts in this district typically consider under section 1412, other factors lend further weight to transferring venue. For instance, according to the Debtor's Schedules D and E/F, the dollar value of the Hills' Judgment is roughly 97% of the total claims with a "known" value in this case. The Hills are by far the largest creditor in this case. The Schedules and Statement of Financial Affairs illustrate that this chapter 7 case is essentially a "two-party dispute" between the Debtor and the Hills. Furthermore, the Debtor commenced this chapter

9

7 filing immediately after the State Court's deadline by which it had to appear via new counsel in the State Court Action. This chapter 7 case thus is a transparent attempt to escape the State Court's edict and authority. Likewise, in the wake of its decisive, multi-million dollar loss in the State Court Action, Mr. Zokaites' decision to file this chapter 7 case more than a thousand miles away from Allegheny County is a transparent, calculated gambit to seek a forum that is much less convenient to the Hills and any other creditors. Finally, many unanswered questions surround whether Mr. Zokaites had the legal authority to sign and file a voluntary petition for the Debtor in this district, given his admission under oath that he did so as its "Former President."

27. In view of these circumstances, the bankruptcy court's concluding observation in *Bensalz* resonates in this case:

> Ample documentary evidence supports the conclusion that transfer of this case to the Southern District of New York is appropriate. Even after giving great weight to Bensalz's selection of venue and straining to accept the tenuous business justifications offered, the Court cannot condone the end run to justice that tinges every aspect of Bensalz filing its bankruptcy case in this district. *Micci v. Bank of New Haven (In re Micci)*, 188 B.R. 697, 699-700 (S.D. Fla. 1993). As a result, the Court will transfer the case.

*In re Bensalz Prods., supra,* 2022 Bankr. LEXIS 1428 at *24.

## CONCLUSION

Sometimes, deciding whether to transfer venue of a bankruptcy case is hard. In this instance, the decision is easy. Every pertinent factor supports transfer in the interest of justice and for the parties' convenience. The Debtor is a Pennsylvania company. All of its creditors are located there. All or substantially all potential witnesses live in Pennsylvania. Even Mr. Zokaites, who signed the voluntary petition (using his home address in Florida as the Debtor's), maintains a residence in Pennsylvania. The Debtor's only alleged real estate interest is in Pennsylvania. The only two lawsuits in which the Debtor has been involved during the last year are in Pennsylvania.

10

And Mr. Zokaites caused the Debtor to file its chapter 7 case in this district in a transparent effort to evade the State Court's directive that the Debtor must appear by new counsel in the State Court Action. As the court opined in *Bensalz,* "the end run to justice . . . tinges every aspect of [the Debtor] filing its bankruptcy case in this district." This case belongs in the Western District of Pennsylvania.

**WHEREFORE**, Richard and Frances Hill respectfully request the Court enter an Order transferring this case to the Western District of Pennsylvania, and for all other relief that is just and proper.

        Respectfully submitted,

/s/ *Eyal Berger*
AKERMAN LLP
Eyal Berger (Fla. Bar No. 011069)
201 East Las Olas Boulevard, Suite 1800
Ft. Lauderdale, FL 33301
Telephone: (954) 712-6071
Email: eyal.berger@akerman.com

-and-

BERNSTEIN-BURKLEY, P.C.
David W. Ross (PA ID No. 62202) (*pro hac vice application will be filed with the Court*)
601 Grant Street, 9th Floor
Pittsburgh, PA 15219-1900
Telephone: (412) 456-8100
Email: dross@bernsteinlaw.com

*Attorneys for Richard and Frances Hill*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 1, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case and via US Mail as indicated below.

By: /s/ *Eyal Berger*
Eyal Berger, Esq.

Leslie Road Associates, LLC
3080 NE 47th Street
Ft. Lauderdale, FL 33308
*Debtor*

Jeffrey M. Siskind
3465 Santa Barbara Drive
Wellington, FL 33414
*Attorney for Debtor*

Leslie S. Osborne
1300 N. Federal Highway, Suite 203
Boca Raton, FL 33432
*Chapter 7 Trustee*

Office of the United States Trustee
51 S.W First Avenue, Room 1204
Miami, FL 33130

Adams Township
P.O. Box 1230
Mars, PA 16046

Edward Spontak Esq.
437 Grant St., Suite 200
Pittsburgh, PA 15219

Alex and Mary Primus
517 Meadow Lane
Clinton, PA 15026

Mars School District

P.O. Box 1230
Mars, PA 16046

Jacob A. Deane Esq.
437 Grant St., Suite 620
Pittsburgh, PA 15219

Butler County
124 W. Diamond St.
P.O. Box 1208
Butler, PA 16003

Jon R. Perry Esq.
437 Grant St., Suite 200
Pittsburgh, PA 15219